**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |
|---|---|
| HONG TANG, | * |
| Plaintiff, | * |
| v. | *   Civil Case No.: SAG-19-02965 |
| KURT L. SCHMOKE, *et al.* | * |
| Defendants. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Plaintiff Hong Tang ("Tang" or "Plaintiff") filed this suit against Defendants Kurt L. Schmoke, Joseph S. Wood, Kathleen Anderson, Christy Lee Koontz, and Patria de Lancer Julnes, in their official and individual capacities, and Darlene B. Smith and Roger E. Hartley, in their official capacities (collectively, "Defendants"). ECF 1. Tang asserts claims pursuant to 42 U.S.C. § 1983 for due process and equal protection violations stemming from charges that he violated the University of Baltimore's academic integrity policy. *Id.* Presently pending is Defendants' Motion to Dismiss, ECF 11. Tang filed a response, ECF 14, to which Defendants filed a Reply, ECF 21. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the reasons stated below, Defendants' Motion to Dismiss will be granted.

**I. Factual Background[1]**

On or about April 19, 2015, Professor Patria de Lancer Julnes at the University of Baltimore ("UB") sent an email to Tang regarding his performance in a course entitled "Public-

---

[1] The facts are derived from Tang's Complaint in this case, ECF 1, and Tang's First Amended Complaint in his earlier lawsuit, *Tang v. Univ. of Balt.,* Civil No. 18-2200-JKB ("*Tang I*"), ECF 8.

Sector Performance Measurement." *Tang v. Univ. of Balt.*, Civil No. 18-2200-JKB ("*Tang I*"), ECF 8-1.  The email quoted a message Professor de Lancer Julnes had sent Tang on March 13 via Sakai Assignments, and explained:

> I have been giving you feedback about my concerns with the work you have submitted to class.  I posted the communication below in the assignment section of Sakai for your logic model and also wrote feedback on the midterm for your copying material without attribution and citing work that had nothing to do with what you were writing.  I have not heard from you.  As such, I am referring this matter for further review to the Dean of Students.

*Id.* Professor de Lancer Julnes copied Kathy Anderson, the Dean of Students in UB's Office of Community Life, on the April 19, 2015 email.

On May 7, 2015, the Office of Community Life informed Tang that he would face a disciplinary charge of plagiarism. *Tang v. Univ. of Balt.*, Civil No. 18-2200-JKB, ECF 8 ¶ 13.  On June 19, 2015, UB issued a disciplinary decision, finding Tang responsible for an academic integrity violation.  *Id.*, ECF 8-9.  The decision imposed two sanctions:  an "XF" grade in the course to reflect the academic integrity violation, with the ability to remove the "X" designation by completing a voluntary integrity assignment after one year; and completion of an initial integrity paper by July 20, 2015.  *Id.*   The disciplinary decision informed Plaintiff that he had five business days to request review by UB's Office of the Provost.  *Id.*

Plaintiff timely requested review.  ECF 8 ¶ 29. However, on July 22, 2015, the Provost denied his appeal.  *Id.* ¶ 30.  As of September 15, 2015, Plaintiff had not completed the assigned integrity paper.  *See* ECF 8-2.

On July 18, 2018, nearly three years to the day after the denial of his appeal by UB, Plaintiff filed his complaint in *Tang I* in this Court.  *Tang I,* ECF 1.  United States District Judge James K. Bredar granted a motion to dismiss the complaint on December 21, 2018, adopting the reasoning in the Defendants' Motion to Dismiss, which had argued various grounds, including improper

2

service of process and Eleventh Amendment immunity. *Tang I,* ECF 28. Following an appeal, the Fourth Circuit affirmed Judge Bredar's decision, and ruled not only that Plaintiff had failed to meet his burden to demonstrate proper service, but also that certain claims were barred by the Eleventh Amendment. *Tang v. Univ. of Balt.*, 782 F. App'x 254 (4th Cir. 2019). However, the panel determined that the case should have been dismissed without prejudice. *Id.* The Fourth Circuit's mandate issued on October 9, 2019, *Tang I*, ECF 36, and Plaintiff filed the instant action the next day. ECF 1.

## II.   Standard of Review

Under Rule 12(b)(6), a defendant may test the legal sufficiency of a complaint by way of a motion to dismiss. *See In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017); *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016); *McBurney v. Cuccinelli*, 616 F.3d 393, 408 (4th Cir. 2010), *aff'd sub nom.*, *McBurney v. Young*, 569 U.S. 221 (2013); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). A Rule 12(b)(6) motion constitutes an assertion by a defendant that, even if the facts alleged by a plaintiff are true, the complaint fails as a matter of law "to state a claim upon which relief can be granted."

Whether a complaint states a claim for relief is assessed by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). That rule provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of the rule is to provide the defendants with "fair notice" of the claims and the "grounds" for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (citation omitted) ("Our decision in *Twombly*

expounded the pleading standard for 'all civil actions' . . ."); *see also Willner v. Dimon*, 849 F.3d 93, 112 (4th Cir. 2017). However, a plaintiff need not include "detailed factual allegations" in order to satisfy Rule 8(a)(2). *Twombly*, 550 U.S. at 555. Further, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 135 S. Ct. 346, 346 (2014) (per curiam).

Nevertheless, the rule demands more than bald accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). If a complaint provides no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," it is insufficient. *Twombly*, 550 U.S. at 555. Rather, to satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556.

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted); *see Semenova v. MTA*, 845 F.3d 564, 567 (4th Cir. 2017); *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015); *Kendall v. Balcerzak*, 650 F.3d 515, 522 (4th Cir. 2011), *cert. denied*, 565 U.S. 943 (2011). However, a court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" that the plaintiff is entitled to the

legal remedy sought. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011), *cert. denied*, 566 U.S. 937 (2012).

Typically, when a plaintiff is self-represented, his pleadings are "liberally construed" and "held to less stringent standards than [those filed] by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted). Although Tang is a lawyer, barred in the state of New York, he argues that his pleadings are entitled to liberal construction because he is not a member of the Maryland bar. ECF 14 at 2. While Tang cites nonbinding authority, if any of these cases support the proposition he propounds, then the Court did not get that page.[2] In any event, even if this Court were to apply a more lenient standard, Tang's claims suffer from several fatal defects, which are described below. *See Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310, 314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014) ("[L]iberal construction does not absolve Plaintiff from pleading a plausible claim."); *see also Coulibaly v. J.P. Morgan Chase Bank, N.A.*, Civil Action No. DKC-10-3517, 2011 WL 3476994, at *6 (D. Md. Aug. 8, 2011) ("[E]ven when pro se litigants are involved, the court cannot ignore a clear failure to allege facts that support a viable claim.").

### III. Analysis

#### A. Statute of Limitations

The instant Complaint is barred by the statute of limitations. "The statute of limitations for § 1983 claims is borrowed from the applicable state's statute of limitations for personal-injury actions, even when a plaintiff's particular § 1983 claim does not involve personal injury." *Brown v. Dep't of Pub. Safety & Corr. Servs.*, 383 F. Supp. 3d 519, 542 (D. Md. 2019) (quoting *Tommy Davis Constr., Inc. v. Cape Fear Pub. Util. Auth.,* 807 F.3d 62, 66-67 (4th Cir. 2015)). Maryland's statute of limitations for personal injury claims is three years from the date of the occurrence. *Id.*;

---

[2] Barry Zuckerkorn, *Arrested Development*, Twentieth Century Fox (2004).

5

*see also* Md. Code Ann., Cts. & Jud. Proc. § 5-101. Because Tang's appeal was denied by UB on July 22, 2015, he knew of his injury, at the latest, by that date. Thus, his statute of limitations would have run on July 22, 2018. *See Owens v. Balt. City State's Attys. Office,* 767 F.3d 379, 389 (4th Cir. 2014) (applying federal law to determine that "it is the standard rule that accrual occurs when the plaintiff has a complete and present cause of action against a defendant – that is, when the Plaintiff knows or has reason to know of his injury.")

Perhaps anticipating this issue, Tang's Complaint in the instant case cites two "equitable tolling" cases: *Burnett v. New York Central Railroad Co.,* 380 U.S. 424 (1965), and *Perez v. United States,* 167 F.3d 913 (5th Cir. 1999). ECF 1 at 8. As an initial matter, neither of those cases applies Maryland law, which governs the issue of tolling in this case. *See Wallace v. Kato,* 549 U.S. 384, 394 (2007) ("We have generally referred to state law for tolling rules, just as we have for the length of statutes of limitations."); *Wade v. Danek Med., Inc.,* 182 F.3d 281, 289 (4th Cir. 1999) ("[I]n any case in which a state statute of limitations applies—whether because it is 'borrowed' in a federal question action or because it applies under *Erie* in a diversity action—the state's accompanying rule regarding equitable tolling should also apply.").

In Maryland, statutes of limitations are strictly enforced. *See Walko Corp. v. Burger Chef Sys., Inc.,* 281 Md. 207, 210 (1977) ("The principle of law is indisputable, that when the Statute of Limitations once begins to run, nothing will stop or impede its operation."). In *Walko,* the Maryland Court of Appeals ruled that when the limitations period elapses during the pendency of an initial action that "fails for some technical, procedural defect falling short of a full decision on the merits," a second suit based on the same cause of action is properly dismissed on limitations grounds. *Id.* at 211 ("Absent a statutory provision saving the plaintiff's rights, the remedy is barred where limitations has run during the pendency of the defective suit."); *see also Sasso v. Koehler,*

445 F. Supp. 762, 765-66 (D. Md. 1978) (determining that, under *Walko,* a second suit was barred by limitations when the limitations deadline expired during the pendency of a first suit, dismissed for failure to serve process and lack of jurisdiction). Although the *Walko* Court acknowledged that there could be "a statutory provision saving the plaintiff's rights" after the filing of a defective suit, *Walko,* 281 Md. at 211-12, this Court is not aware of any such provision that would be applicable here. Maryland's only potentially applicable "saving statute" provides:

> **After Certain Dismissals by a United States District Court or a Court of Another State.** Except as otherwise provided by statute, if an action is filed in a Unites States District Court or a court of another state within the period of limitation prescribed by Maryland law and that court enters an order of dismissal (1) for lack of jurisdiction, (2) because the court declines to exercise jurisdiction, or (3) because the action is barred by the statute of limitations required to be applied by that court, an action *filed in a circuit court* within 30 days after the entry of the order of dismissal shall be treated as timely filed in this state.

Md. Rules 2-101(b) (italicized emphasis added). Plaintiff refiled his action in United States District Court, not in a circuit court of Maryland, and thus, the saving statute does not apply.

In addition to the fact that the cases cited by Plaintiff, *Burnett* and *Perez*, apply law other than Maryland's, these two cases do not suggest a different result. For example, in *Perez,* which is not binding precedent, the Fifth Circuit deemed the statute of limitations to have been equitably tolled where a plaintiff had timely provided a presentment of his claim to the Texas National Guard in writing, thus fulfilling the notice requirement of the Federal Tort Claims Act, and the Texas National Guard did not follow regulations requiring them to provide a claim form to Plaintiff. *See id.* at 917–19. That case bears no factual resemblance to this one, in which Tang's first lawsuit was dismissed for inadequate service of process, among other reasons. Ultimately, application of Maryland law, and its strict adherence to the statute of limitations, precludes equitable tolling on these facts and warrants dismissal on limitations grounds.

In the opposition, Plaintiff further contends that his claims should be equitably tolled as a result of the Fourth Circuit's decision in *Tang I. See Tang v. Baltimore*, 782 F. App'x 254 (4th Cir. 2019); *see also* ECF 14 at 5 ("The court of appeals apparently does not intend to prematurely dismiss the case with prejudice, and intends to afford the Plaintiff an opportunity to cure the jurisdictional defect."). However, the Fourth Circuit did not "expressly reserve[] the plaintiff's right to maintain the second action," as Tang suggests. *See* ECF 14 at 6. In fact, the Court's per curiam opinion did not address statute of limitations, nor did it refer to equitable tolling in any manner. Thus, the cases Plaintiff cites are inapposite, including *Burnett v. N.Y. Central R.R. Co.*, 380 U.S. 424 (1965). In *Burnett*, the petitioner brought an action against his employer in state court under the Federal Employers' Liability Act ("FELA"). *Id.* at 424. After the state court action was dismissed for improper venue, he brought an identical action in federal court. *Id.* at 425. Although the initial state court lawsuit was filed within the relevant statute of limitations period, the period had expired prior to the second suit, and thus, the federal court dismissed it as untimely. *Id.* In determining whether the plaintiff's suit should have been equitably tolled, the Supreme Court analyzed congressional intent as embodied in FELA. Ultimately, the Court held that,

> [W]hen a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the state action.

*Id.* at 428.

*Burnett* is of no assistance to Tang here where, *inter alia*, this case does not concern FELA, initial suit was not filed in state court, and the Court lacked jurisdiction precisely because Tang failed to properly serve the defendants. The Fourth Circuit's opinion in *Tang I* does not compel this Court to overlook statutes of limitations or other infirmities in Plaintiff's claims.

8

Finally, Tang cites cases for the proposition that it would be inequitable to apply *res judicata* in this context. ECF 14 at 6 (citing *Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y. 2d 343 (1999)). Aside from the fact that these cases are not binding on this Court, Defendants have not raised res judicata as a basis to dismiss Tang's claims. Tang's Complaint is barred by the statute of limitations, which is dispositive of this case. Nonetheless, the Complaint suffers from other deficiencies, as explained below.

### B. Substantive Deficiencies

<u>Due Process</u>

In addition to the limitations issue described above, Tang's Complaint otherwise fails to state a claim for which relief can be granted. "In order to properly maintain a due process claim, a plaintiff must have been, in fact, deprived of a constitutionally protected liberty or property interest." *Tigrett v. Rector & Visitors of Univ. of Va.,* 290 F.3d 620, 628 (4th Cir. 2002). Academic decisions, such as the awarding of a particular grade or the assigning of an integrity paper or other project, do not implicate a student's property interests. *See Smith v. Utah Valley Univ.*, 97 F. Supp. 3d 998, 1004 (S.D. Ind.) ("[N]o court has found that students have a property interest in receiving a specific grade. To the contrary, courts have been extremely skeptical when reviewing claims by students alleging that their property interest in a certain grade has been denied."), *aff'd,* 619 F. App'x 559 (7th Cir. 2015); *Hubbard v. John Tyler Cmty. Coll.,* 455 F. Supp. 753, 756 (E.D. Va. 1978) (denying to subject grades given to a nursing student to judicial scrutiny). The Supreme Court has noted, "Considerations of profound importance counsel restrained judicial review of the substance of academic decisions." *Regents of University of Michigan v. Ewing,* 474 U.S. 214, 225 (1985). As Tang made clear in the exhibits to his complaint in *Tang I,* during the time of his disciplinary proceedings he was "enrolled as a nondegree student for one semester for the Spring

2015 semester" and had not "made any decision on whether to have any future study at the University of Baltimore." *Tang I*, ECF 8-2. Thus, an interest in continued enrollment in an academic program was not an arguably protectible property interest. *See e.g.*, *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 223 (1985).

Perhaps recognizing the inadequacy of his Complaint, Tang raises, in his opposition, a number of new arguments. For instance, although somewhat unclear, Tang suggests he was deprived of substantive due process because he was not given a "warning" as the sanction for his plagiarism offense. *See* ECF 14 at 10 ("It is most likely that a student will only be given a warning or be reminded of plagiarism procedure at maximum."). As an initial matter, plaintiffs "cannot, through the use of motion briefs, amend the complaint." *Mills v. State Highway Admin.*, 2015 WL 72270, at *3 (D. Md. Jan. 5, 2015). In any event, Tang cites no authority for this contention that UB was limited to warning him when it issued a sanction. Certainly, Tang has not directed the Court to any case finding that imposition of a specific penalty, in the academic context, constituted a due process violation.

With respect to procedural due process specifically, "The federal judicial power, in cases of this kind, does not run to the imposition of some abstract level of procedural regularity upon academic disciplinary processes but only to ensuring 'rudimentary precautions against unfair or mistaken findings of misconduct and arbitrary exclusion from school.'" *Jones v. Bd. of Governors of Univ. of North Carolina*, 704 F.2d 713, 715–16 (4th Cir. 1983) (quoting *Goss*, 419 U.S. at 581). In *Jones*, which Tang cites in his opposition, a nursing school accused one of its students of cheating on a final examination. *Id.* at 715. The student appeared in a "University Student Court" consisting of three students, where she was found guilty of academic dishonesty. *Id.* However, a subsequent university panel determined that irregularities in the Student Court hearing made the

proceeding "fatally defective." *Id.* After an appeal by the University Counsel, the school found her guilty, and cancelled her registration for the next semester. *See id.* The student filed suit under § 1983, specifically alleging that the school's proceedings violated her procedural due process rights. *Id.*

On appeal, the Court affirmed the district court's issuance of a preliminary injunction that reinstated the nursing student pending resolution of her claims. The Court specifically emphasized that the student tribunal's determination was significantly flawed — by the university's own admission — such that it was completely set aside. *Id.* at 716. Accordingly, the Court found that further factual development was necessary to determine whether the plaintiff was deprived of procedural due process rights. *Id.* at 717. Here, by contrast, Tang states in a conclusory fashion that Defendants departed from "the mandatory-character language" of its handbook. ECF 14 at 3. However, it is uncontested that Tang not only received notice about the plagiarism charge, but also appealed the determination. *See Goss v. Lopez*, 419 U.S. 565, 579 (1975) (explaining that notice and opportunity for hearing are the minimum elements of due process rights). Even if the University did depart from its established procedures (which Tang has not demonstrated), "not every departure from a state agency's stated or customary procedures constitutes a denial of constitutionally guaranteed procedural due process." *Jones*, 704 F.3d at 717. Accordingly, Tang has established neither a substantive, nor a procedural, due process violation.

Equal Protection

Similarly, Tang's equal protection claim is substantively deficient. A plaintiff establishes a violation of equal protection where he can "first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty,* 239 F.3d 648, 654 (4th Cir.

2001). Neither the Complaint in this case, nor the First Amended Complaint in *Tang I,* includes any factual allegations about how any other student was treated, or any factual allegations suggesting that any action against him was taken on the basis of his membership in any particular class. In fact, neither Complaint makes any mention of another student at all — let alone in the context of academic discipline. Tang has provided this Court with no facts to suggest that he was treated differently than others because of his race, national origin, or any other protected characteristic. Accordingly, Tang has not stated a viable equal protection claim.

### Qualified Immunity

Finally, as Defendants contend in their motion, even if this Court were to assume that some constitutional right had been violated by Defendants' actions, the right was not clearly established, and Defendants would therefore be entitled to qualified immunity. *See Cloaninger ex. Rel. Estate of Cloaninger v. McDevitt,* 555 F.3d 324, 330-31 (4th Cir. 2009) (requiring that "the right [be] clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right."). As noted above, there are few, if any, clearly established rights in the context of disciplinary proceedings in higher education, other than a basic requirement of notice and some opportunity to be heard. *Goss v. Lopez,* 419 U.S. 565, 579-81 (1975). Tang was afforded notice, a hearing, and an appeal, and thus cannot establish violation of any clearly established constitutional right. *See Dist. Of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) ("The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply."). Therefore, the § 1983 suits against Defendants in their individual capacities are dismissed on this basis as well.

## IV.     Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss, ECF 11, shall be granted. The case is dismissed with prejudice because Tang's claims are 1) barred by the statute of limitations, 2) barred by the doctrine of qualified immunity as to the defendants in their individual capacities, and 3) substantively deficient even after amendment.  A separate Order follows.


Dated: July 27, 2020                                             /s/
                                                                              Stephanie A. Gallagher
                                                                              United States District Judge